Reggio vs. McCan.

## No. 10,149.

### E. REGGIO VS. D. C. McCAN.

When a plantation owned jointly by a number of persons is mortgaged to secure a debt which they (the mortgagors) alone owe, and the owner of the outstanding interest in the property, not bound for the debt, convey that interest to the mortgagors, his co-proprietors, and waives in favor of their creditor his privilege and mortgage, upon the sale of the plantation to pay the mortgage debt, the creditor, after the full satisfaction of his debt, cannot apply the balance of the price at which the property is adjudicated to the payment of a subsequent mortgage in his favor. He cannot encroach upon the mortgage and vendors privilege of this co-proprietor beyond what is required to pay the mortgage debt, for the benefit of which the waiver was made.

APPEAL from the Civil District Court for the Parish of Orleans. *Houston*, J.

*Armand Pilié* and *Jérome Meunier* for Plaintiff and Appellee :

1. The transfer of a mortgage by its holder to the creditor of a third person, to secure the debt of the latter, is an obligation with an implied suspensive condition resulting from the nature of the contract (Rev. C. C. 2026), whereby the transferrer binds himself to pay, or, at least, to abandon his right of mortgage in payment to the transferree, in order to enable him to enforce said right against the mortgagor in the lieu and stead, and in right of the mortgagee, in case of the non-payment of the debt at maturity by the debtor. P. Pont, Vol. 1, on Privileges and Mortgages, Nos. 472, in fine, 473 and 478.

If the debt is then paid in full by the debtor, the condition on which the transferrer's obligation was made to depend being defeated, the law will consider the agreement as never having had any existence, and release the transferrer from all liability thereunder. Rev. C. C. 2028, P. Pont, *ubi supra.*

But if the debt is only partially discharged, then the deficiency only is to be supplied from the proceeds of the ceded mortgage, for, the transferrer's obligation having, on the payment of such shortage, been extinguished by performance (C. C. 2130), he retains his priority over other and subsequent mortgages for the surplus of his claim : *cessante causa, cessat effectus.* 10 Rob., 155; P. Pont, Vol. 1, Nos. 479, 480.

2. Whether the object of a contract entered into with a view to secure the debt of a third person, be the cestion of a mortgage claim, or of the mortgage attaching thereto, separately, or of the priority of the mortgage only, the effects of the contract will be the same in each several instance (P. Pont, on Privileges and Mortgages, Vol. 1, Nos 475 478), and the following special rules will govern, to wit :

1st. The creditor who enforces the hypothecary right which has been ceded or transferred to him, acts in the lieu and stead, and in right of the transferree, and must exercise or enforce that right in the same manner the latter would himself have done it. P. Pont, on Privileges and Mortgages, same volume, Nos. 473, 475 and 478.

2d. The hypothecary right which has been ceded cannot be made to increase or decrease in the hands of the transferree, and, inasmuch as it attaches to the whole and every particle of the sum it secures, whatever is left of the latter, after satisfaction of the debt in reference to which the transfer was made, reverts to the transferrer. 10 Rob. 155, P. Pont on Privileges and Mortages, Vol. 1, Nos. 479 and 480.

*Harry H. Hall* for Defendant and Appellant.

The opinion of the Court was delivered by

TODD, J.   On the 17th of March, 1880, Alph C. Reggio Louisa and Edward Reggio, mortgaged to Charles P. McCan a plantation situated in the parish of Plaquemines, known as the "Promised Land" plantation, to secure a debt of $8700.

On the same day Miss Ernestine Reggio sold to the other Reggios, the above named mortgagors, six twenty-fifths of the same plantation for $7200 and retained a mortgage to secure the payment of the price.

This act of sale contains the following stipulations (quoting):

"It being distinctly understood, however, by and between the parties hereto, that the mortgage which the said Alph. Reggio, in conjunction with Edward Reggio and Louise Reggio, has this day granted upon the above described plantation, in favor of Chas. P. McCan, by an act passed before me notary, shall have preference and priority of rank and privilege over the mortgage and vendor's privilege herein granted, in consequence of the indebtedness due said McCan, arising from matters connected with the present vendor's ownership of part of said plantation prior to this date, and the assumption of such indebtedness by said Messrs. Reggio and Miss Louise Reggio, to the acquittance and discharge of the present vendor."

"And that in case of the sale of the herein described plantation, whatever amount may be due under the aforesaid mortgage granted in favor of said McCan, shall be paid in preference and without regard to the mortgage granted by these presents," etc.

On the 17th of June, 1882, the mortgaged property was sold under foreclosure proceedings, and adjudicated to the mortgagee, Charles P. McCan, for $16,700.

Of this sum $3264.50 was applied to the payment of a prior judicial mortgage, and the residue retained by the purchaser.

On the 1st of February, 1883, the property was acquired by the defendant.

Ernestine Reggio having died before this judicial sale took place, Edward Reggio, her testamentary executor, brought suit to subject the said plantation named, and in possession of the defendant as third possessor, to the payment of $2617.80, being the balance remaining out of the proceeds of said judicial sale, after the satisfaction of the mortgage of Chas. P. McCan, and which, it is claimed, should have been applied to the payment of the mortgage of Ernestine Reggio.

The answer avers that after the payment of the prior incumbrances on the plantation and costs, there remained out of the proceeds of the

judicial sale made on the 17th June, 1882, $13,435.50, and in resistance of the plaintiff's demand it is averred.

1. That inasmuch as the respondent's "mortgage claim of $10,817.70 rested, not alone upon nineteen twenty-fifths of the plantation sold, but upon the entire place; and inasmuch as by her act of sale Ernestine Reggio gave to said mortgage preference and priority of rank over her mortgage and vendor's privilege, which she expressly made subordinate and inferior in rank to the said mortgage of C. P. McCan; and inasmuch as McCan's mortgage was given to secure a debt for which she was primarily liable in part; and inasmuch as her vendor's privilege only rested upon six-twenty-fifths of said plantation, it follows that the sum of $10,817.20 should be deducted from said balance of $13,435.50, leaving for *pro rata* distribution the sum of $2,617.78.

2. "That McCan holding subsequent mortgages upon said plantation, and Ernestine Reggio holding a vendor's privilege only upon six twenty-fifths thereof, she is entitled to $628.26 only of said residuum, which respondent has always been ready and willing to pay, with 8 per cent per annum interest from June 17, 1882."

There was judgment for plaintiff for the full amount claimed, and defendant has appealed.

The determination of the cause rests entirely upon the construction of the clause in the act of the 17th March, 1880, quoted above, containing the waiver or renunciation of Miss Ernestine Reggio in favor of McCan.

Construed in connection with the circumstances preceding and attending the execution of the act as disclosed by the record, we find no difficulty in discovering what we conceive to be the motive that prompted its execution, and its real meaning and intent.

The mortgage given to McCan by the three Reggios named, though given on the entire plantation, operated only on nine twenty-fifths of it, that being the extent of their interest in it. There was an outstanding interest belonging to Miss Ernestine Reggio of six-twenty-fifths of the property. Miss Reggio evidently desired that McCan's debt should be fully secured, and the reason why she so wished is explained in the writing, being as therein stated, that McCan's debt arose out of matters with which she had been connected as part owner of the land, and the assumption of her indebtedness by her co-owners and her acquittance and discharge therefrom. To remove any doubt about the sufficiency of the security for McCan's debt, she agrees that his mortgage (quoting) "shall have preference and priorty of rank and privilege over the mortgage and vendor's privilege herein

31

granted." This mortgage and privilege was the first mortgage and privilege upon the interest of Miss Reggio's in the land. She waived its rank in favor of McCan, and by this act also subjected her interest in the land to the mortgage given by her co-proprietors over the residue of the plantation, and which but for this; act would be free from the mortgage.

The only purpose of this contract on the part of Miss Reggio was to secure the identical debt for which the mortgage had just been executed by the other proprietors. It looked to none other and certainly could not have referred to any subsequent mortgage that McCan might have on the land, and which at the time of her contract was not even in existence. Nor did she bind herself personally for the debt, but her engagement was strictly limited by the language of the act to giving the preference to McCann's mortgage over the portion of the land on which her own mortgage and vendor's privilege rested. And what was the full scope of her obligation under this waiver or renunciation ? It was simply that any deficits there might be after exhausting the mortgaged property of his debtors, should be made good out of the proceeds of her portion of the land on which her mortgage and privilege operate. This is plainly the full extent of Miss Reggio's liability, without invoking or considering the elementary rule of construction substantially to the effect that if from the language of a written instrument any doubt can exist as to the fact of liability or extent of the liability of an obligor, it must be construed most favorably to such obligor.

The mortgage of McCan was enforced against the plantation and it was sold. The debt was then, with interest and costs, $10,817.70. The property brought $16,700. From this total was deducted $3264.50, leaving for distribution in the sheriff's hands $13,435.50. Out of this McCan's entire debt was paid, leaving a balance of $2617.80. This balance the plaintiff, as the legal representative of Ernestine Reggio, claims should be applied to paying the mortgage and privilege in favor of her estate and the defendant, McCan, contends that nineteen twenty fifths of this residuum should be applied to the extinguishment of his subsequent mortgage on the property, leaving to the plaintiff only the excess of such proceeds over such mortgages, amounting to $628.26.

The judge of the first instance rejected this contention or proposition and gave judgment in favor of the plaintiff for this balance or residuum after the full satisfaction of McCan's mortgage. We think the judge was right, and his judgment is affirmed.